## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

ADAM LACROIX, as an individual

      Plaintiff,

v.                             Case No: 2:20-cv-992-SPC-NPM

TOWN OF FORT MYERS
BEACH, FLORIDA, BILL
STOUT and ROXANNE TUCCI,

      Defendants.

_____/

## OPINION AND ORDER[1]

Before the Court is Plaintiff Adam Lacroix's Motion for Preliminary Injunction (Doc. 11) and Defendants Town of Fort Myers Beach, Bill Stout, and Roxanne Tucci's response in opposition (Doc. 43). The Court held oral argument on the matter on March 15, 2021. The Court denies the Motion.

## BACKGROUND

This is a case about whether a town ordinance banning portable signs infringes on Lacroix's constitutional rights. Lacroix believes he has a mandate to "exercise his rights to freedom of speech and the free exercise of religion, and

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

to further his religious, political, and social beliefs." (Doc. 1 at 5, ¶ 23). Lacroix preaches on public sidewalks and public streets. (Doc. 1 at 9, ¶ 53; Doc. 1 at 10, ¶ 69). While doing so, he distributes free literature and carries portable signs. (Doc. 1 at 6, ¶ 32). Twice in 2020, the Town of Fort Myers Beach cited Lacroix for violating its prohibition against portable signs.

The first citation occurred on October 1. Stout issued a written warning to Lacroix for carrying a portable sign. (Doc. 1 at 9, ¶ 56). Stout stated on the written warning: "30-5 para 18," "portable sign violation," and "next violation will result in a citation for $100.00 or more to be issued." (Doc. 1 at 9, ¶¶ 56, 57, 58).

The second citation occurred on December 17. Roxanne Tucci issued a written citation that read "Signs 30-4(a) 30-5 (18)." She fined Lacroix $100. (Doc. 1 at 11, ¶¶ 72, 73).[2]

Section 30-15(18) of the Town's code prohibits portable signs. A portable sign is defined as "any movable sign not permanently attached to the ground or building." *See* Sec. 30-2. The code also provides it is "unlawful for any person to erect, construct, enlarge, move, or convert any sign in the Town of

---

[2] After Lacroix spoke with the Town's Beach and Street Enforcement Supervisor, the Town dismissed the December citation. Lacroix was cited because he was the group leader, although he was not carrying the portable sign.

Fort Myers Beach, or cause such work to be done, without first obtaining a sign permit for each such sign as required by this chapter." *See* Sec. 30-4(a).

Lacroix brings five claims against the Town. He alleges "as applied" violations of his freedom of speech (Count I) and freedom of exercise of religion (Count II), and facial challenges for purported violations of the free speech and free exercise clause (Count III) and the equal protection clause (Count IV). He also alleges a violation of Florida's Religious Freedom Restoration Act (Count V).

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (internal quotation marks and citation omitted). Preliminary injunctions are thus the exception, not the rule. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). The point of injunctive relief is to preserve the status quo until a final decision on the merits. *Antoine on behalf of I.A. v. Sch. Bd. of Collier Cty.*, 301 F. Supp. 3d 1195, 1202 (M.D. Fla. 2018).

To justify a preliminary injunction, the movant must show (1) "a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public

interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Movants must "clearly establish" each element. *Callahan v. U.S. Dep't of Health and Human Servs. Through Alex Azar II*, 939 F.3d 1251, 1257 (11th Cir. 2019) (citation omitted). If any element is unproven, a court can deny the preliminary injunction without considering the other elements. *Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001).

## DISCUSSION

Lacroix failed to show a substantial likelihood of success on the merits, which is necessary to get the extraordinary remedy of a preliminary injunction. The Court, therefore, need not analyze all the issues and arguments raised by the parties. Lacroix's inability to meet the first element is alone preclusive. Before turning to the merits, however, the Court first addresses whether Lacroix has standing.

## A. Standing

Article III of the United States Constitution limits the Court's jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. "One element of the case-or-controversy requirement is that [a plaintiff], based on [his] complaint, must establish that [he] has standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Standing is "a fact specific inquiry." *Lujan v. Defs of Wildlife*, 504 U.S. 555, 606 (1992). To establish standing, a complaint must allege

(1) The plaintiff…suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bloedorn v. Grube*, 631 F.3d 1218, 1228 (11th Cir. 2011).

Defendants argue Lacroix alleges no concrete injury. They claim Lacroix's instant lawsuit has the same standing issues present in a previous lawsuit. *See Lacroix v. Lee Cty., Fla.*, Case No: 2:18-cv-143-FtM-38CM, 2018 WL 3536173 (M.D. Fla. Jul. 23, 2018), *aff'd*, 819 F. App'x 839 (11th Cir. 2020). The Court disagrees.

The Eleventh Circuit affirmed this Court's ruling in the 2018 case because "there [was] a complete absence of any allegations that Lacroix intends to speak in the future at any" venue or event where the challenged ordinance would be unconstitutionally enforced.[3] 819 F. App'x at 844. That is not the case here. Lacroix alleges he intends to speak in public spaces in Fort Myers Beach, including the same location where he was twice cited. (Doc. 1 at 6, ¶ 36). And he points out his desire "to continue his peaceful activities without being incarcerated or cited." (Doc. 1 at 6, ¶ 30). That makes this situation analogous to the facts in *Bloedorn*.

---

[3] In that case, Lacroix complained that his inability to preach at a special event permitted pursuant to a Lee County special event permitting ordinance violated his First Amendment rights. But he failed to allege he planned to preach at a future event subject to the ordinance.

There, the Eleventh Circuit held that a Christian evangelical preacher suffered a concrete, imminent injury because he had been arrested for failure to comply with a university speech policy and alleged he wanted to preach on the campus again. *Id.* at 1229. Likewise, Lacroix intends to preach at the same location he has been cited but has not done so fearing prosecution. Given LaCroix intends to engage in the same conduct the Town has sought to prevent, he adequately establishes a substantial likelihood of future injury. *See also Bischoff v. Osceola Cty.*, 222 F.3d 874 (11th Cir. 2000) (finding standing when the plaintiffs had been told to stop distributing handbills at a particular location, their colleagues had been arrested, and the plaintiffs intended to return to the same location to distribute handbills).

## B. First Amendment

The Court now turns to the merits of Lacroix's First Amendment claims. The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U.S. Const., Amdt. 1. Under that clause, a government, including a municipal entity vested with state authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).

In First Amendment jurisprudence, the distinction between content-based and content-neutral regulations of speech is critical. Content-based

laws—those that target speech based on its ideas or messages or subject matter—are presumptively unconstitutional and will be sustained only if they satisfy strict scrutiny. *See, e.g.*, *United States v. Playboy Ent. Group, Inc.*, 529 U.S. 803, 817 (2000); *R.A.V. v. City of St. Paul, Minn*, 505 U.S. 377, 382 (1992). But content-neutral laws—laws that regulate speech for some reason other than its content—are reviewed under a lesser, and often deferential, standard. *See, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (requiring content-neutral speech to be "narrowly tailored to serve a significant governmental interest, and [to] leave open ample alternative channels for communication of the information").

Lacroix relies largely on the Supreme Court's decision in *Reed v. Town of Gilbert, Arizona*, 576 U.S. 155 (2015). There, the Supreme Court dealt with an ordinance enacted by the town of Gilbert, Arizona, which created various categories of signs based on the type of information they conveyed, then subjected each category to different restrictions. Gilbert's sign code prohibited the display of outdoor signs anywhere within the Town without a permit, but it then exempted 23 categories of signs from that requirement, including ideological signs, political signs, and temporal directional signs related to a qualify event. The Town's ordinance imposed far more restrictions on temporary directional signs than on either ideological signs or political signs. Ideological signs had no time or placement restrictions and could be up to 20

square feet.  Political signs were permitted during election season and could be up to 32 feet.  Temporary directional signs could not be greater than 6 square feet.  And the timing of display for these signs was limited to 12 hours before an event and no longer than one hour after.

A church and its pastor wished to advertise the time and location of their Sunday church services.  To do so, the Church placed temporary signs around the Town.   The   placements   violated   the   Town's   ordinances,   prompting litigation.

The   Supreme   Court   applied   strict   scrutiny   because   it   found   the restriction was content-based because of the division of signs into ideological, political, and temporary directional based on the sign's message.  To classify the sign, the enforcing official would have to read the sign to know which category the sign fell under, and then would need to apply the regulations to that category.

The Supreme Court found the law could not survive strict scrutiny because the Town did not show the code's distinctions furthered a compelling governmental interest and was narrowly tailored for the objective.  The town's interests in preserving aesthetic appeal and traffic safety were "hopelessly underinclusive." *Gilbert*, 576 U.S. at 171.  As for the preservation of aesthetics, the Court said, "temporary directional signs are 'no greater an eyesore' than ideological or political [signs]."  *Id*. at 172.  Similarly, the Town "offered no

reason to believe directional signs pose a greater threat to safety than do ideological signs and political signs." *Id*.

The Court ended by pointing out municipalities have ample content-neutral methods available to deal with issues such as aesthetic clutter or traffic safety:

> The Town has ample content-neutral options available to resolve problems with safety and aesthetics. For example, its current Code regulates many aspects of signs that have nothing to do with a sign's message: size, building materials, lighting, moving parts, and **portability**.

*Gilbert*, 576 U.S. at 173 (emphasis added).

Lacroix's argument hinges on his assertion that Section 30-5(18) is a content-based regulation. He bases his argument on a broad reading of the portable sign definition. Because the Town defines a portable sign "as any movable sign not permanently affixed to the ground," Lacroix contends signs temporarily placed in the ground, such as real estate signs and election signs, are portable signs. Since these signs are permitted and his signs are not, Lacroix contends it amounts to a content-based regulation.

While acknowledging the Town's definition of portable signs could liberally be read to include signs temporarily placed into the ground, the Court does not find Lacroix provides enough factual basis in his complaint to show he will likely succeed on the merits. Neither his complaint nor motion for a preliminary injunction allege the Town sees real estate signs and election signs

as portable signs. Lacroix also admits these signs are exempt from the permitting requirement, not the portability requirement. There are also no allegations about the type of sign Lacroix was using, about the message on the sign, or any indication the sign's content played any role in the citation.

What's more, by applying basic principles of statutory interpretation, the Court concludes the types of signs pointed to by Lacroix are not portable signs. "A general statutory rule usually does not govern unless there is no more specific rule." *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524 (1989); *see also RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general." (cleaned up)). Local ordinances are subject to the rules of statutory interpretation. *Artistic Entertainment, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1206, n.14 (11th Cir. 2003) ("A municipal ordinance is essentially a 'local statute'; it is subject to the same rules that govern the construction of statutes.").

Further, because interpretation of the Town's code is an issue of state law, the Court must consider Florida's rules of statutory construction. *See Municipal Utilities Bd. of Albertville v. Ala. Power Co.*, 21 F.3d 384, 387 (11th Cir. 1994) ("When construing a state statute, we look to state rules of statutory construction, because the same rules of construction apply in a federal court as would apply in a state court.") Florida also applies "the long-recognized

principle of statutory construction that where two statutory provisions are in conflict, the specific statute controls over the general statute." *State v. J.M.,* *824 So. 2d 105, 112 (2002)* (cleaned up).

Here, the specific language of the Town code describing real estate signs and political signs as temporary signs controls over Lacroix's contention they are portable signs. A real estate sign is defined as "a temporary sign which advertises the sale, exchange, lease, rental, or availability of the parcel, improved or unimproved, upon which it is located." And an election sign is defined as "a sign temporarily installed in the ground or attached to a building relating to the election of a person to a public office or relating to a matter to be voted upon at a federal, state, or local election." There is admittedly a conflict between the broad definition of portable sign and the specific definitions of real estate signs and election signs. As noted, real estate signs and elections signs are temporary such that they could be considered portable. But given the Town specifically defines real estate signs and election signs, the general definition of portable sign does not apply to them.

At bottom, Lacroix's complaint describes two citations given to Lacroix for violating the Town's ban on portable signs. A review of the Town's code reveals the ban amounts to a total ban on portable signs. When Stout and Tucci cited Lacroix for violating the law, they did not need to read the sign to know which category it fell into. Instead, the officers could classify it as a

portable sign because of its physical characteristics unrelated to the content. Neither Stout nor Tucci cited Lacroix because of the message displayed on his portable signs.  His citation depended solely on the type of sign, not on the sign's underlying message.

Lacroix's reliance on *Reed v. Gilbert* is misplaced.  There, the town banned outdoor signs without a permit, but then exempted categories of signs, with different rules for the different categories based on the message.  Such is not the case here—the Town bans portable signs, with no exemptions based on content.  If Lacroix alleged the officers did not cite other portable signs but cited his, or that he applied for a permit to temporarily erect his sign in the ground (like a real estate or election sign) but was denied, perhaps his claim would be closer to *Reed*. But Lacroix merely alleges the Town cited him for violating its total ban on portable signs.

Having decided the ban on portable signs is content-neutral, the Court must next determine whether the Town's interests justify this regulation.  The Town puts forth two justifications: aesthetics and traffic safety.  A quick review of case law compels the conclusion these interests justify the ban on portable signs.  *See, e.g.*, *Harnish v. Manatee Cty., Fla.*, 783 F.2d 1535, 1540 (11th Cir. 1986) (holding that the county's total ban on portable signs was constitutional as it reasonably advanced the governmental goal of protecting the county's aesthetic interests); *Don's Porta Signs, Inc. v. City of Clearwater*, 829 F.2d

1051, 1053-54 (11th Cir. 1987) (holding that the city's restrictions on portable signs was constitutional as they directly furthered the governmental goal of protecting the town's aesthetic interests by producing at least a partial solution to the government's efforts to reduce visual clutter); *Messer v. City of Douglasville, Ga.*, 975 F.2d 1505, 1513-14 (holding that the city's restrictions on portable signs was constitutional as they partially solved the government's interest in aesthetics); *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 805 (1984) ("It is well settled that the state may legitimately exercise its police powers to advance [a]esthetic values."); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981) (establishing traffic safety and the appearance of a city as substantial governmental goals). The Court places little stock in Lacroix's argument the Eleventh Circuit's application of the four-part commercial speech test somehow invalidates the principle those cases stand for.

The Court finds the ban on portable signs content-neutral. The Town's interests in traffic safety and aesthetics are important enough to justify the total ban on portable signs. As a result, the Court finds Lacroix is unlikely to succeed on the merits of his First Amendment claim.

## C. Unbridled Discretion

Pivoting slightly from the arguments above, Lacroix insists the Town's code gives unbridled discretion to government officials to enforce speech

regulations. This charge lacks merit because Lacroix misapplies the unbridled discretion doctrine.

"It is long-settled that 'when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially." *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1220 (11th Cir. 2017) (quoting *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-56 (1988)). Perhaps "the plainest example of an unconstitutional grant of unbridled discretion is a law that gives a government official power to grant permits but that provides no standards by which the official's decision must be guided." *Id.* at 1221. There, "the official can grant or deny permit for any reason she wishes." *Id.*

The problem with this theory is the Town's ban on portable signs is not a licensing or permitting scheme that grants Town officials with discretion allow or disallow speech. The Town has a total ban on portable signs. If the town permitted some types of portable signs and empowered Town officials to approve of the sign, then Lacroix might have a viable claim. But neither party advances that argument and the Court will not read that into the Ordinance.

**D. Equal Protection Claim**

The Court turns finally to Lacroix's equal protection claim. Under the Fourteenth Amendment, no state can "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1.

Lacroix asserts a "class-of-one" claim, apparently arguing he, a preacher using a portable sign, is treated differently than a person using a portable flag.[4] (Doc. 11 at 15-16).

"The Equal Protection Clause requires government entities to treat similarly situated people alike." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11th Cir. 2006). These claims are not limited to parties within "a vulnerable class." *Id.* All individuals enjoy that protection. *Id.* at 1313-14. Meaning Lacroix can bring an equal protection claim for selective enforcement of local ordinances. *Id.* at 1314.

To prevail under the Equal Protection Clause, Lacroix must show he (1) "was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminate[ion]." *Leib v. Hillsborough Cty. Public Transp. Com'n*, 558 F.3d 1301, 1307 (11th Cir. 2009). Put another way, Lacroix must show he "has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

---

[4] Lacroix does not argue an equal protection violation occurred when he, as the leader of the group, was cited in December even though he was not the person holding the portable sign.

Lacroix's "class-of-one" claim fails for two reasons. First, he is not similarly situated to a person carrying a flag. Acknowledging Lacroix's broad conception of "portable sign," the Court still does not think a flag constitutes a sign because the Town's code distinguishes between a flag and sign. A sign is defined as "any name, figure, character, outline, display, announcement, or device, or structure supporting the same, or any other device of similar nature designed to attract attention or convey a message outdoors, and shall include all parts, portions, units, and materials composing the same, together with the frame, background, and supports or anchoring thereof." Meanwhile, a flag is "any fabric or bunting used as a symbol (as of a nation, government, political subdivision or other entity) or as a signaling device." As should be clear from this text, there is a difference between a flag and a sign. And second, while a flag is portable, the Town has proffered a rational reason for its distinct treatment of flags and portable signs.

Accordingly, it is now **ORDERED:**

Plaintiff Adam Lacroix's Motion for Preliminary Injunction (Doc. 11) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on March 22, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

16